(115 App. Div. 25)

### In re TROY PRESS CO.

(Supreme Court, Appellate Division, Third Department. September 13, 1906.)

**1. TAXATION—NOTICES OF TAX SALES—REDEMPTION—STATUTES—IMPLIED REPEAL—REPEAL OF SPECIAL BY GENERAL ACT.**

Second Class Cities Law, Laws 1898, p. 376, c. 182, § 29, as amended by Laws 1903, p. 435, c. 182, requiring the council to designate newspapers published in the city to be the official papers thereof, and Laws 1899, p 1288, c. 581, § 29, amending the law by adding thereto section 313, providing for the publication of notices of tax sales and of the redemption from such sales in the official newspapers of the city, being enacted for the purpose of making a uniform charter for cities of the second class, impliedly repeal Laws 1860, p. 390, c. 236, and Laws 1892, p. 1041, c. 512, relating to the publication of such notices in a designated city of the second class.

**2. SAME.**

General Tax Law, Laws 1896, p. 795, c. 908, providing for the publication of notices of tax sales and of the redemption therefrom in newspapers designated for the publication of the Session Laws being enacted for the purpose of giving a uniform procedure throughout the state, impliedly repeals Laws 1860, p. 390, c. 236, and Laws 1892, p. 1041, c. 512, relating to the publication of such notices in a designated city and county, except so far as the same relates to the sale of real estate for taxes in any city, since section 158 of the general tax law (page 850) provides that it shall not affect laws relating to the sale of real estate for taxes in any city.

**3. SAME—SALE OF LAND FOR NONPAYMENT OF TAXES—NOTICES—PUBLICATION—STATUTES.**

Under the charter of the city of Rensselaer, Laws 1897, pp. 360, 402, 403, c. 359, §§ 62, 202, 204, requiring the council to designate newspapers published in the city as official newspapers, and providing for the publication in the official newspapers of notices of tax sales and of redemption therefrom, notices of tax sales of land in the city must be published in the official newspaper.

**4. SAME.**

Since Laws 1897, pp. 360, 402, 403, c. 359, §§ 62, 202, 204, requiring the council to designate newspapers published in the city as official newspapers, and providing for the publication in such newspapers of notices of tax sales and of redemption therefrom provides for the publication of notices of sale and redemption of lands for city taxes only, the notices for sale for state and county taxes and for redemption therefrom are governed by the general tax law, Laws 1896, p. 795, c. 908.

**5. STATUTES—REPEAL—CONSTRUCTION.**

Where the construction of a general statute clearly implies the repeal of special statutes, the special statutes will be deemed repealed, though confusion by reason of acts done under the special statutes subsequent to the enactment of the general statute will arise.

[Ed. Note.—For cases in point, see vol. 44, Cent. Dig. Statutes, §§ 235–237.]

Chester, J. dissenting.

Appeal from Special Term, Rensselaer County.

Application by the Troy Press Company for a writ of mandamus to compel Elias P. Mann as county treasurer of Rensselaer county to deliver to relator orders for the publication in the Troy Daily Press of certain notices. From an order denying the motion for a peremptory writ, the relator appeals. Reversed.

The relator is a domestic corporation publishing the Troy Daily Press in the city of Troy in Rensselaer county. The respondent is the treasurer of said county. Upon June 8, 1905, the respondent, as treasurer, gave to two newspapers, the Troy Daily Times and the Troy Evening Standard, with orders for publication, a notice of sale to be held July 1, 1905, for state and county taxes of 1903. On November 21, 1904, the respondent gave to said two newspapers for publication notice of redemption of lots sold July 31, 1903, for unpaid taxes of 1901. Upon November 11, 1905, respondent gave to said two newspapers for publication notice of redemption of lots sold July 30, 1904, for unpaid taxes of 1902. The relator demanded, prior to each publication, that the said notices be given to it for publication claiming to be entitled under the law to the right to publish the same and to compensation therefor. Although the respondent refused to give to the relator the order for the publication of these several notices the notices were in fact duly and regularly published by the relator. For the publication of these notices the relator is unable to procure compensation without producing before the board of supervisors of the county the order of the respondent for the publication of the same. The object of this proceeding is to compel the county treasurer to give such orders nunc pro tunc that they may be submitted to the board of supervisors upon relator's claim for compensation for the publishing of the said notices. There is no dispute as to the facts in the case. The sole question is whether, under the law, the relator was one of the newspapers in which the respondent was required to cause the publication of such notices at the respective dates at which they were published.

Argued before SMITH, CHESTER, KELLOGG, and COCHRANE, JJ.

William J. Roche, for appellant.

Lewis E. Griffith, for respondent.

SMITH, J. No question is made by the respondent as to the form of the remedy sought. The sole question argued is as to the right of the relator, under the statute, to the publication of these notices.

The county of Rensselaer contains the city of Troy, which is a city of the second class, the city of Rensselaer, a smaller city not of the second class, and 14 towns. The Troy Times and the Evening Standard, the papers to which these notices were given by the respondent for publication were duly appointed as county newspapers pursuant to chapter 512, p. 1041, of the Laws of 1892. By chapter 236, p. 390, of the Laws of 1860 the county treasurer was required to publish these notices in two of the public newspapers in the city of Troy having the largest circulation. One or two minor amendments to that act were passed which required publication in one or two newspapers outside of said city of Troy. Chapter 512, p. 1041, of the Laws of 1892 authorizes the board of supervisors to designate as "county newspapers" two daily newspapers of opposite politics published in the city of Troy and also two weekly newspapers having the largest circulation therein and one weekly newspaper published in the town of Hoosick and one weekly newspaper published in the town of Greenbush, and further provided that after such meeting "every advertisement chargeable to said county, except the Session Laws, shall be advertised in the county newspapers which shall be such at its first insertion, and not otherwise." If these statutes were in force as to the notices directed to be published by the county treasurer in 1904 and 1905 the action of the county treasurer was authorized and this mandamus was properly denied.

The relator's contention, however, is that these statutes were not in force; that they had been impliedly repealed as to the notices relative to the city of Troy by chapter 182, p. 371 of the Laws of 1898, as amended by chapter 581, p. 1268 of the Laws of 1899. This law of 1898 is known as the "Second Class Cities Law." It is further claimed that as to the rest of the county they have been impliedly repealed by chapter 908, p. 795 of the Laws of 1896, which is the general tax law.

First as to the city of Troy: Section 29 of the second class cities law as amended by chapter 182, p. 435, of the Laws of 1903, provides that at the first meeting of the common council after the election of its members it shall designate two daily newspapers published in the city to be the official newspapers of the city. It is conceded that pursuant to this statute the Troy Daily Press was at the time of the publication of these notices one of the official newspapers of the city duly designated pursuant to the statute. By section 313 of that act (Laws 1899, p. 1288, c. 581), it was provided:

"In all cases where county and state taxes which have been levied upon real estate in any city shall remain unpaid after the time when the same should have been paid, notice of the sale of land situate in the city for such unpaid taxes shall be published in the official newspapers of the city. * * * *"

In the same section it is provided that notices of the redemption from such sales shall be published in the official newspapers of the city. It is apparent that if this statute in these particulars applies to the city of Troy, it repeals by implication the Laws of 1860 and 1892 as far as they direct publication of such notices in two county papers to be designated by the board of supervisors. That these provisions of the statues do apply to. the city of Troy seems to me unquestionable That the city of Troy has the requisite population to bring it within the cities of the second class as provided by the statute is conceded. The object of this statute was to make a uniform charter for such cities and there is no apparent reason why the notices of tax sales or of redemptions from tax sales should not be governed by this general uniform plan as well as any other provision for the government of city affairs. It is probably true that the former statutes quoted made a complete system of special laws for the collection of taxes, the publishing of notices of tax sales, and the publishing of the notices of the right to redeem therefrom. Recognizing the rule that special statutes are not to be deemed to be repealed by implication by general statutes unless intention to repeal the same be found by clear intendment, the general purpose of this statute granting a uniform charter to cities of the second class is prima facie evidence of such intendment and is conclusive evidence thereof unless there be something in the situation which renders the proceeding directed by the special statute to be peculiarly applicable to the city of Troy. There is no reason suggested why the system called for by the general statute is not just as effective for the city of Troy as for other cities of the second class, nor why it is not equally effective and adaptable as were the special statutes governing the same which were in existence at the time of the passage of the act. Second: As to the notice of tax sales and re-

demption therefrom as to the rest of the county the relator contends that the special acts are repealed by chapter 908, p. 795 of the Laws of 1896 known as the "General Tax Law." Without reciting the full text of the provisions of that law applicable to the case at bar it may be said generally that it is provided by that tax law that the county treasurer shall cause to be published a notice of sale for unpaid taxes for six weeks "in two newspapers designated by law for the publication of the Session Laws." By section 157, "the provisions of article 6 of this act, entitled 'sales by comptroller for unpaid taxes and redemption of lands' shall, in so far as it is not otherwise herein provided, govern and control the action of the county treasurer, who shall perform the duties therein devolved upon the comptroller and the same rights and remedies shall be deemed to exist under the provisions of this article as are provided for in said article 6." Article 7 contains no specific provisions for publication of redemption notices, therefore, under section 157 above stated the provisions of article 6 must control as to the publication of redemption notices. In that article, in section 130, it is provided that the comptroller shall publish notices of the right to redeem "in the newspapers designated by the board of supervisors of the county in which such lands are situated, to publish the Session Laws." It is conceded that the relator is one of the newspapers duly designated to publish Session Laws in the county of Rensselaer. Therefore, if this general tax law controls the publication of these notices, the respondent wrongfully refused to give to the relator an order for the publication thereof. The respondent admitting this proposition nevertheless contends that the tax law is a general law, and does not repeal the special laws determining the system for the collection of taxes in the county of Rensselaer. The same answer seems to me applicable as to the proposition that this special law was not repealed as to the city of Troy by the statute creating a charter for the cities of the second class. The object of these general statutes in this revision was not to supply a procedure for some counties which had no procedure provided by special laws but to make general laws which would give a uniform procedure in different parts of the state. That object cannot be too jealously adhered to in cases where the surrounding conditions do not make necessary the retention of a special law. That these general laws repeal special statutes governing special localities, though not specially enumerated in the repealing act connected therewith, seems to be determined in the case of People ex rel. Catholic Union of City of Albany v. Sayles, 32 App. Div. 203, 53 N. Y. Supp. 65, affirmed on opinion below in 157 N. Y. 677, 51 N. E. 1092. It is further declared in the Matter of Huntington's Estate, 168 N. Y. 399, 61 N. E. 643 and again in Pratt Institute v. City of New York, 183 N. Y. 151, 75 N. E. 1119. In the last case cited the learned judge, writing the opinion of the court, speaking of the tax law says:

"It is a codifying act, designed to reduce all statutes relating to taxation into a complete and harmonious system. A codifying act is presumed to exhaust the subject to which it relates, unless a different intention appears on the face of the statute, or is an irresistible inference from special circumstances. The new enactment is substituted in place of all statutes previously existing and becomes the sole rule of action."

In the Pratt Case in the Appellate Division reported in 99 App. Div. 525, 91 N. Y. Supp. 136, the court referring to the Huntington Case says:

"Although the question in that case arose upon a transfer tax, yet the Court, in reaching its judgment, held that the Tax Law is such a revision and substitute for all former exemption statutes, general and special, as to supersede and repeal them by implication."

In the Huntington Case at page 408 of 168 N. Y., page 646 of 61 N. E., the court said:

"If these views are correct, it was not necessary to search out the many private statutes conferring exemptions and to enumerate them in the schedule of the repealed statutes. In the construction of a statute of so much moment, enacted as the result of long experience, much discussion and great consideration, the rule that effect must be given to the intent of the Legislature, if the language of the enactment will permit, is of commanding force."

In the cases cited the special statutes which were deemed repealed by implication by the general tax law were statutes prescribing certain exemptions. It is claimed that the statute here claimed to be repealed by implication is not a statute prescribing exemptions but one prescribing a mode of procedure and therefore that the cases cited are no authority for the proposition that the special statutes which were in force before the passage of these acts have been repealed by implication. Where, however, a uniformity is sought and there is no apparent reason why a uniform procedure is not feasible in the city of Troy the argument would seem to me to be stronger for the following of the general statute and the holding of the repeal of the special statute by implication. Special reasons could more easily be found for special exemptions in special localities than for special procedure in those localities. If the special statutes governing procedure were allowed to be deemed in force the general act would fail of its purpose to accomplish a uniform procedure.

By section 158 of the tax law, however, article 7, which provides for the sale of lands for the nonpayment of taxes and for the publication of the notice thereof, does not repeal any statute providing for the sale of real estate for taxes in any city. The general tax law, being limited thus to the notices for the sale and redemption of lands outside of the city, can hardly work by implication a repeal of these special laws as to the sale and redemption, and publication of notices thereof, in a city. As to the land, therefore, in the city of Troy, the special statutes governing the publication of notices of tax sales and redemption from such sales were not repealed by the general tax law. In 1897 the city of Rensselaer was created by chapter 359, p. 323 of the laws of that year. By sections 202 and 204 provision is made for the publication of notices of tax sales and notices of redemption from such sales in the official newspaper of such city. By section 62 it is prescribed that the common council shall at its first meeting in each official year designate one or more papers, not more than two, published in said city as official newspapers thereof. Notices of tax sales of land in the city of Rensselaer, therefore, must be published in the official newspaper as prescribed in the act creating the city. The relator is not a newspaper published in the city of Rensselaer and

therefore, under chapter 359, p. 323 of the Laws of 1897, is not entitled to the publication of notices of tax sales therein.

But this act provides for the publication of notices of sale and redemption of lands for city taxes only. As to the notices for sale for state and county taxes and for redemption therefrom the general tax law will still govern.

The argument is made that under these notices and under the special statutes lands have been sold and the granting of this application would disturb many tax titles and bring confusion in the administration of the tax law in the county of Rensselaer. The sale made under the special law was of an interest different from that required to be made under the general statute. This argument is not without force in the construction of these statutes and were the question a doubtful one should have weight with the court in resolving that doubt. Where, however, the construction of the statute seems clear and to hold in force these special statutes would require not only a disregard of governing principles of construction of these statutes established by the authorities in the state but a disregard of the ultimate governing purpose in the enactment of these general statutes it is better that the general rule be established even at the expense of some confusion by reason of sales heretofore had under statutes which have been repealed.

The order should be reversed and the mandamus issue as to notice of lands to be sold for taxes or to be redeemed, which are situated in the county of Rensselaer except for city taxes within said city of Rensselaer. All concur except CHESTER, J., who dissents.